UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CHARLES JULIEN**                                                      **CIVIL ACTION**

**VERSUS**                                                              **NUMBER: 21-1081**

**ST. JOHN THE BAPTIST PARISH SCHOOL SYSTEM, ET AL.**   **DIVISION "5"**

**ORDER AND REASONS**

Before the Court is the Motion for Summary Judgment (rec. doc. 88) filed by Defendant St. John the Baptist Parish School Board (the "School Board"). Plaintiff Charles Julien filed an opposition to the motion (rec. doc. 97) and the School Board filed a reply. (Rec. doc. 100). Having thoroughly reviewed the pleadings and the case law, the Court rules as follows.[1]

**I.    Background**

The School Board owns and operates East St. John High School in St. John the Baptist Parish. (Rec. doc. 88-5). In August 2017 Plaintiff was hired to work as an English teacher at East St. John High School and he also began coaching the boys' basketball team. (Rec. docs. 89-2 at 1, 97 at 1). Coaching the boys' basketball team is not a full-time position but an additional duty, and the person holding the position is paid a stipend. (Rec. doc. 89-4 at ¶ 7). The coaching position is at-will and can be discontinued for any reason or for no reason at all, regardless of whether the person who holds the position is also employed by the School Board in another position. (*Id.* at ¶ 8).

Plaintiff replaced Yussef Jasmine as head coach of the basketball team. (*Id.* at ¶¶ 11-13). Jasmine, who coached the team for 10 seasons, posted an overall regular season win-

---

[1] The parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636 on February 14, 2022. (Rec. doc. 38).

loss record of 98-51, won multiple district championships, and participated in the Louisiana High School Athletic Association ("LHSAA") basketball playoffs for nine seasons. (*Id.* at ¶ 111). Julien failed to maintain Jasmine's level of success during his tenure as coach. (*Id.* at ¶¶ 13-15). During Plaintiff's first season as coach, the team finished with an overall record of 15-18. (*Id.* at ¶ 13).

High school athletic teams in Louisiana are bound by the rules of the LHSAA. (*Id.* at ¶ 4). In the fall of 2018, Principal Christopher Mayes investigated Plaintiff for possible LHSAA rules violations, including violation of cash-handling protocols, requiring students to practice on Sunday in violation of the LHSAA's regulations, and requiring students to practice in excess of three hours per day – the daily limit imposed by the LHSAA for engaging in collective activity. (Rec. docs. 88-9, 88-10). Upon conclusion of his investigation, Mayes relieved Plaintiff of his duties as basketball coach on October 26, 2018. (Rec. doc. 88-11).

Three days after Mayes relieved him of his coaching duties, Julien sent a text message to the School Board's Superintendent, Kevin George, claiming that Mayes sexually harassed him. (Rec. doc. 88-12). Superintendent George assigned the investigation of that complaint to Serina Duke, the Human Resources Director. (Rec. doc. 88-13). Duke requested that Julien submit a full report to enable the investigation. (*Id.*).

Julien submitted his formal complaint on October 30, 2018. (Rec. doc. 88-14). The report identified no witness to the alleged sexual harassment. (*Id.*). As part of her investigation, Duke obtained statements from both Mayes and Brown. (Rec. docs. 88-15, 88-16). Mayes vehemently denied Plaintiff's allegations, noting that he was not present with Plaintiff on many of the dates and times on which Plaintiff alleged that Mayes sexually

harassed him. (Rec. doc. 88-15). He also noted that Brown was present during many of his interactions with Plaintiff. (*Id.*). In his own statement, Brown corroborated his presence during many of Mayes' interactions with Plaintiff and attested that he had never witnessed inappropriate behavior by Mayes vis-à-vis Plaintiff. (Rec. doc. 88-16). After a full and complete review of the information presented, and Julien's failure to submit the names of any witnesses or other evidence as requested, Julien's claims were determined to be unsubstantiated. (Rec. doc. 88-17). Notwithstanding that Mayes believed that he had relieved Plaintiff of his coaching duties for just cause, on November 26, 2018, Superintendent George opted to reinstate Julien's coaching duties to avoid the students missing their basketball season for lack of a coach. (Rec. doc. 89-4 at ¶ 27).

Despite this second chance, circumstances did not improve for Plaintiff or the basketball team. The team finished with a record of 9-21 during Plaintiff's second season as head coach and failed to make the playoffs for the first time in a decade. (*Id.* at ¶ 14). During the summer of 2019, Brown received verbal and written complaints from both players and their parents claiming that Plaintiff was bullying and harassing student athletes. (*Id.* at ¶ 45); (Rec. doc. 88-19). Based on these complaints, Julien's coaching record, and the overall culture of the basketball program, Brown decided to hire another coach to lead the basketball program and to relieve Plaintiff of his coaching duties. (Rec. doc. 89-4 at ¶¶ 47-48). The decision to relieve Plaintiff of his duties was based solely on Brown's independent assessment of the boys' basketball program at East St. John High School. (*Id.* at ¶ 48). Brown did not consult with or receive any directive from Mayes before deciding that Plaintiff should be relieved of his coaching duties. (*Id.* at ¶ 49).

Brown's decision did not affect Plaintiff's position as an English teacher. (Rec. doc. 1 at ¶ 1). Other than a brief transfer to East St. John Preparatory School by Dr. Lynette Hoofkin based on the uncomfortable working relationship between Plaintiff and Brown after Plaintiff filed suit, Plaintiff has remained employed at East St. John High School as an English teacher. (Rec. doc. 52-2).

On June 3, 2021, Plaintiff filed his Complaint against the School Board, Mayes, Brown, Cory Butler, and Heidi Trosclair. (Rec. doc. 1).[2] In his Complaint, Plaintiff alleges retaliation for reporting the alleged sexual harassment by Mayes in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (*Id.* at ¶¶ 25-29).[3] Plaintiff alleges that the retaliation consisted of locking Plaintiff and his basketball team out of the workout and practice facilities, requiring Plaintiff to obtain additional insurance for the boys from other feeder schools who practiced at the School Board's facilities, refusing to allow the basketball team to participate in Athletic Physical Education, and by ultimately relieving him of his coaching duties. (*Id.* at ¶¶ 14-17).

On January 10, 2022, Plaintiff filed his First Supplemental and Amended Complaint, in which he alleged retaliation in violation of Title VII and Louisiana Revised Statute § 23:967 for filing this lawsuit, as well as whistleblower violations under Louisiana Revised Statute § 42:1169. (Rec. doc. 28 at ¶ 36). He also added Hoofkin – the newly-hired Superintendent – as a Defendant. (*Id.*).

---

[2] Butler and Trosclair were Interim Superintendents during the relevant time periods. (Rec. doc. 1 at ¶¶ 7-8).
[3] According to the pleadings, Plaintiff filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC") on or about February 11, 2020. (*Id.* at ¶ 10). On April 6, 2021, the EEOC issued a right to sue letter to Plaintiff. (*Id.*). The Court notes that the referenced EEOC complaint and the right-to-sue letter are not attached to the complaint nor as an exhibit to any of the pleadings, and it therefore cannot verify the dates.

On October 29, 2021, Defendants Brown, Mayes, and the School Board filed a Motion to Dismiss Pursuant to Rules 12(b)(6), 12(b)(5), and 12(b)(2) (rec. doc. 12), which this Court granted. (Rec. doc. 49). On February 1, 2022, Plaintiff filed a Motion to Dismiss Cory Butler and Heidi Trosclair as Defendants (rec. doc. 34), which this Court also granted. (Rec. doc. 36).

On April 12, 2022, Hoofkin answered Plaintiff's Amended Complaint and asserted a counterclaim against Plaintiff for bad faith. (Rec. doc. 42). On November 18, 2022, the Court granted Plaintiff's Motion for Reconsideration Under Rule 59(e) and reinstated Plaintiff's claims against the School Board. (Rec. doc. 62). Hoofkin then filed a Motion for Judgment on the Pleadings (rec. doc. 52), which this Court granted on February 14, 2023. (Rec. doc. 72). Accordingly, the School Board is the sole remaining Defendant in this lawsuit.[4]

## II. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those

---

[4] Hoofkin's counterclaim against Plaintiff also survives.

5

portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must marshal evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Further, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). A court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

**III.    Law and Analysis**

Under Title VII, retaliation is actionable when a plaintiff engages in protected activity, such as reporting discrimination or perceived discrimination that violates the statute, and suffers a causally-related adverse employment consequence. *Reichert v. Infusion Partners, L.L.C.*, No. CV 22-5450, 2023 WL 4685377, at *6 (E.D. La. July 21, 2023) (citing *Ackel v. Nat'l Commc'ns*, 339 F.3d 376, 385 (5th Cir. 2003)). Accordingly, to state a *prima facie* case of retaliation under Title VII, a plaintiff must show that: 1) he engaged in an activity protected by Title VII; 2) he was subjected to an adverse employment action; and 3) a causal link exists between the protected activity and the adverse employment action. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII

7

forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)). The opposition clause of Section 2000e-3(a) requires the employee to demonstrate that he had at least a "reasonable belief" that the practices he opposed were unlawful. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (citing *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981)). In *Payne*, the Fifth Circuit explicitly rejected the position that proof of an actual unlawful employment practice is necessary to state a claim for unlawful retaliation. 654 F.2d at 1137-41. An informal complaint to a supervisor regarding an unlawful employment practice may satisfy the opposition requirement of a Title VII retaliation claim. *See Tureaud v. Grambling State Univ.*, 294 F. App'x 909, 914-15 (5th Cir. 2008); *Jefferies v. Harris Cty. Cmty. Action Ass'n*, 615 F.2d 1025, 1036 (5th Cir. 1980); *see also Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004) (same); *Shannon v. Bellsouth Telecommc'ns, Inc.*, 292 F.3d 712, 716 n.2 (11th Cir. 2002) (same); *Goings v. Lopinto*, No. CV 22-2549, 2023 WL 2709826, at *9 (E.D. La. Mar. 30, 2023) (same).

Retaliation claims are analyzed under the same *McDonnell-Douglas* burden-shifting framework as discrimination claims: "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation."[5] *Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *LeMaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007)); *Bardell v. Jefferson Par. Sch. Bd.*, No. CV 20-3245, 2023 WL 2894687, at *11 (E.D. La. Apr. 11,

---

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 472 (1973).

8

2023). To do so, "the plaintiff must establish that 'but for' the protected activity, the adverse employment action would not have happened." *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) (observing that a Title VII retaliation claim requires "proof that the desire to retaliate was the but-for cause of the challenged employment action").

### A. Adverse Employment Action

The School Board first argues that Plaintiff cannot establish a *prima facie* case of retaliation because no adverse employment action occurred.[6] The United States Supreme Court has held that "[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). It extrapolated:

> We speak of *material* adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998); *see Faragher*, 524 U.S., at 788, 118 S. Ct. 2275 (judicial standards for sexual harassment must "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing' "). An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. See 1 B. Lindemann & P. Grossman, Employment Discrimination Law 669 (3d ed. 1996) (noting that "courts have held that personality conflicts at work that generate antipathy" and "'snubbing' by supervisors and co-workers" are not actionable under § 704(a)). The antiretaliation provision seeks to prevent employer interference with "unfettered access" to Title VII's remedial mechanisms. *Robinson*, 519 U.S., at 346, 117 S. Ct. 843. It does so by prohibiting employer actions that are likely "to deter victims of discrimination from complaining to the EEOC," the courts, and their employers. *Ibid.* And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence. See 2 EEOC 1998 Manual § 8, p. 8-13.

---

[6] The School Board does not dispute that Plaintiff engaged in protected activity when he submitted his complaint against Mayes.

> We refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings. We have emphasized the need for objective standards in other Title VII contexts, and those same concerns animate our decision here. See, *e.g., Suders*, 542 U.S., at 141, 124 S. Ct. 2342 (constructive discharge doctrine); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (hostile work environment doctrine).

*Id.* at 68-69 (emphasis in original).

Plaintiff alleges four acts that he claims qualify as retaliation:

1. On May 2, 2019, Plaintiff claims that Brown allegedly locked the boys' basketball team out of the weight room. (Rec. docs. 1 at ¶ 14, 88-21 at 6).

2. In May 2019, Plaintiff alleges that Brown informed him that insurance would be required in order for students from feeder schools to use the basketball facilities at East St. John High School. (Rec. doc. 1 at ¶ 15).

3. In August 2019, Plaintiff claims Brown allegedly "refused to allow Plaintiff's basketball team to participate in Athletic PE." (*Id.* at ¶ 16).

4. On September 13, 2019, Mayes and Brown relieved Plaintiff of his coaching duties. (*Id.* at ¶ 17).

With regard to the first three acts, the School Board contends that Plaintiff failed to allege that they dissuaded him from engaging in protected activity as required by *Burlington*. The School Board also argues that Plaintiff failed to allege that the three acts caused him any significant harm or changed his employment with the School Board. For his part, Plaintiff maintains that it is abundantly clear that a reasonable worker would be dissuaded from making or supporting a charge of discrimination if that reasonable worker could not have his team participate in athletic PE, if he were locked out of his practice

10

facility, if he had had to secure additional insurance for his team, or if he was not allowed to have feeder school groups participate in practice.[7]

Recently, the Fifth Circuit reversed Title VII law in this circuit by jettisoning the requirement that an adverse employment action need be an "ultimate employment decision." *Hamilton v. Dallas Cty.*, 79 F.4th 494, 497 (5th Cir. 2023) (en banc). Instead, a plaintiff need only show that he was discriminated against, because of a protected characteristic, with respect to hiring, firing, compensation, or the "terms, conditions, or privileges of employment." *Id.* at 506 (citing 42 U.S.C. § 2000e-2(a)(1)). The School Board contends that the first three aforementioned acts are only "minor inconveniences" and do not constitute adverse employment actions because they did not cause significant harm to Plaintiff's employment. But *Hamilton* requires no such stringent allegation. Plaintiff need only maintain that the alleged discrimination ***affected*** a term, condition, or privilege of his employment. For example, this Court cannot state at this time that no genuine issue of material fact exists with regard to whether access to East St. John High School's facilities or whether the requirement to obtain insurance for students from feeder schools affected a condition or privilege of Plaintiff's employment.

In any event, the School Board wholly fails to address the fourth act – that of relieving Plaintiff of his coaching duties. Indeed, later in its memorandum, the School Board maintains that the "removal from his coaching duties on September 3, 2019 – *the only act that could conceivably be considered 'adverse'. . . .*" (Rec. doc. 89-2 at 11) (emphasis added). While this statement is certainly no admission that relieving Plaintiff of his

---

[7] Plaintiff also maintains that his transfer from East St. John High School to East St. John Preparatory School constituted retaliation. However, Plaintiff asserted this claim only against Hoofkin, and this Court dismissed that claim when it granted Hoofkin's motion for judgment on the pleadings. (Rec. doc. 72).

11

coaching duties was an adverse employment action, the School Board certainly recognizes that a reasonable juror could conclude that such an act by Plaintiff's supervisors constituted one.

Accordingly, this Court cannot state at this stage of the litigation that relieving Plaintiff of his duties as a coach did not affect the terms, conditions, or privileges of Plaintiff's employment. There is no conclusive evidence presented on this point that would render summary judgment appropriate <u>as to this issue</u>. The Court finds that a genuine issue of material fact exists such that a reasonable juror could conclude that relieving Plaintiff of his duties as coach for a discriminatory reason affected his compensation (*i.e.*, his stipend) or the terms, conditions, and privileges of his employment as the basketball coach. Accordingly, the Court declines to find summary judgment appropriate on this factor and will consider the School Board's other arguments.

### B.     Causal Connection

The School Board also argues that Plaintiff cannot establish a *prima facie* case of retaliation because there is no temporal proximity between the filing of the complaint against Mayes and the alleged adverse employment actions. Plaintiff contends that a reasonable juror could conclude that not only did he present direct evidence of retaliation, but that he also presented circumstantial evidence, which creates a rebuttable presumption of retaliation through the materially-adverse employment actions that occurred while he was the basketball coach.

As noted above, a causal link must exist between the protected activity and the adverse employment action. *Willis*, 749 F.3d at 317. "To establish causality, the protected activity and the adverse action must have 'very close' temporal proximity, and 'a five month

lapse is not close enough . . . to establish the causal connection element of a prima facie case of retaliation.'" *Newbury v. City of Windcrest, Tex.*, 991 F.3d 672, 679 (5th Cir. 2021) (quoting *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) (internal quotation marks omitted)). The United States Supreme Court has rendered a decision holding that three months is not within the "very close" requirement. *Clark Cty. Sch. Distr. v. Breeden*, 532 U.S. 268, 273-74 (2001). And the Fifth Circuit, citing *Clark*, has concluded that two and one-half months between the protected activity and the adverse employment decision, standing alone, is not within the "very close" proximity that is necessary to establish causation. *Besser v. Tex. Gen. Land Office*, 834 F. App'x 876, 885 (5th Cir. 2020).

The Court finds that the same conclusion must be reached here because the undisputed facts and evidence show that the first alleged act of retaliation, when Julien was locked out of the weight room, occurred on May 2, 2019, approximately **six months** after Plaintiff filed the sexual harassment complaint against Mayes on October 29, 2018. *See, e.g., Newbury*, 991 F.3d at 679 (finding a five-month lapse not "close enough" to establish a causal connection between adverse employment action and alleged retaliation). Moreover, the subsequent alleged acts of retaliation occurred in late May 2019, August 2019, and on September 13, 2019, between **seven and 11 months** after the Plaintiff filed the complaint against Mayes. Those alleged acts of retaliation, based on their dates of occurrence, are beyond the required mark and are insufficient evidence of the causality necessary to establish a *prima facie* case of retaliation. There is no genuine issue of material fact that Plaintiff cannot establish causation and thus, a *prima facie* case of retaliation.[8]

---

[8] Because the Court finds that Plaintiff cannot establish a *prima facie* case of retaliation, the burden does not shift to the School Board to establish a legitimate, non-retaliatory reason for the alleged adverse employment

### III. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Motion for Summary Judgment (rec. doc. 88) filed by Defendant St. John the Baptist Parish School Board is **GRANTED**.

New Orleans, Louisiana, this __20th__ day of _____December_____, 2023.

                                                **MICHAEL B. NORTH**
                                         **UNITED STATES MAGISTRATE JUDGE**

---

actions under *McConnell-Douglas*. Accordingly, the Court need not address the School Board's arguments on that issue.